UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-318-GNS-CHL

RASHON TURNER,

                                                                          **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,                            **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

Before the Court is the Complaint of Plaintiff, Rashon Turner ("Turner"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for Supplemental Security Income ("SSI"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 14.) Turner filed a Fact and Law Summary on September 9, 2019, (DN 15), and the Commissioner filed a Fact and Law Summary on November 4, 2019, (DN 19). Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

I.     **FINDINGS OF FACT**

Turner filed an application for SSI on April 24, 2017. (DN 11-5, at PageID # 232-37.) Administrative Law Judge ("ALJ") Susan Brock conducted a hearing on Turner's application on July 25, 2018. (DN 11-2, at PageID # 82-109.) In a decision dated January 4, 2019, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether Turner was disabled. (*Id.* at 59-76.) In completing this evaluation, the ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since April 20, 2017, the application date.  (*Id.* at 61.)

(2) The claimant has the following severe impairments: post traumatic stress disorder, bipolar disorder, residuals from gunshot wound to right hip, gout and foot issues, and chronic bronchitis.  (*Id.*)

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 62.)

(4) [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can only frequently climb ramps, stairs, ladders, ropes, and scaffolds.  He could have frequent exposure to fumes, odors, dust, gases, and poor ventilation.  He could have frequent exposure to unprotected heights and hazardous machinery.  Mentally, he can perform simple, routine tasks; occasionally interact with supervisors and coworkers, but never interact with the public; and can tolerate occasional workplace changes as long as they were gradually introduced. (*Id.* at 64.)

(5) The claimant is capable of performing past relevant work as a kitchen helper and also picker/packer laborer, store, the latter though only as described in the DOT and not as performed.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (*Id.* at 74.)

(6) The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2017, the date the application was filed.  (*Id.* at 75.)

Turner requested review by the Appeals Council, which denied his request for review on March 7, 2019.  (*Id.* at 45-50; DN 11-4, at PageID # 227-30.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2019); *see also* 42 U.S.C. § 405(h) (2018) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Turner is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Turner filed this action on April 26, 2019.  (DN 1.)

## II.    CONCLUSIONS OF LAW

The Social Security Act authorizes payments of SSI to persons with disabilities.  *See* 42 U.S.C. §§ 1381-1383f (2018).  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2019).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.      Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. § 416.920 (2019).  In summary, the evaluation process proceeds as follows:

(1)      Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)      Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)      Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20.C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months.  20 C.F.R. § 416.909 (2019).

always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Turner's Contentions

Turner alleged that the ALJ erred in determining his RFC for multiple reasons.[2]  (DN 15.) Specifically, Turner argued that the ALJ's assessment of his physical RFC and his mental RFC were deficient.  (*Id.*)  The undersigned will address each of Turner's contentions below.

### 1.    Physical RFC Determination

Turner argued that the ALJ's RFC finding regarding his physical abilities was unsupported by substantial evidence.  An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a), 416.946(c) (2019).  The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources.  20 C.F.R. § 416.929 (2019); 20 C.F.R. §§ 416.945(a)(1)-(3), 416.946(c).  Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical sources statements in the record and assess the claimant's subjective allegations.  20 C.F.R. § 416.920c (2019); 20 C.F.R. § 416.929(a).

Here, the ALJ found that Turner had the RFC to perform medium work.  (DN 11-2, at PageID # 64.)  Medium work is defined as "involv[ing] lifting no more than 50 pounds at a time

---

[2] The Court's July 30, 2019, Order required Turner "set forth his/her position by an appropriate memorandum of law specifying, inter alia, the numbered findings of the final decision with which exception is taken and the specific errors alleged."  (DN 14.)  The Order also required Turner to submit "a Fact and Law Summary on form supplied by the Court."  (*Id.*)  Turner's Fact and Law Summary stated no objection to the ALJ's Finding Nos. 1-3 and an objection to the ALJ's Finding No. 4; however, Turner's memorandum did not explicitly state his position with respect to the ALJ's Finding Nos. 5 and 6.  (DN 15.)  Accordingly, the undersigned finds that Turner has waived any objections to Finding Nos. 5 and 6 insofar as the same are not referenced in his discussion of his objection to Finding No. 4.  *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c) (2019).  The ALJ found that Turner could "frequently climb ramps, stairs, ladders, ropes, and scaffolds"; have "frequent exposure to fumes, odors, dust, gases, and poor ventilation"; and have "frequent exposure to unprotected heights and hazardous machinery." (DN 11-2, at PageID # 64.) In reaching her conclusion, the ALJ discussed Turner's own testimony regarding his prior employment. (*Id.* at 65.)  Specifically, Turner testified that he lifted 50-100 lbs at two prior jobs. (*Id.*)  The ALJ also cited Turner's testimony that he was "let go due to missing too much work due to gout and his foot swelling up" from his job as a picker/packer in a warehouse; he has to sit down and rest and elevate his feet; over the past two to three months he had gout flare ups two to three times weekly; and on a day when he does not have a flare-up, he can be on his feet for two hours and then sit twenty-five to thirty minutes. (*Id.* at 65-66.)  The ALJ noted that Turner testified he cleans his room, cleans the bathroom, washes dishes, plays board games with his children, goes to the movies with his children, and sometimes goes to the park with his children. (*Id.* at 66.)  The ALJ cited medical records regarding his gunshot wounds and respiratory ailments and emphasized that Turner "did not mention respiratory difficulty or related limitations at the hearing." (*Id.*)

The ALJ also extensively summarized medical records regarding Turner's treatment for his foot problems. (*Id.* at 67-69.)  The ALJ individually discussed the findings from Turner's January 31, 2017; February 7, 2017; March 28, 2017; May 8, 2017; May 30, 2017; August 22, 2017; September 5, 2017; December 12, 2017; January 24, 2018; May 30, 2018; June 13, 2018; and July 31, 2018, visits to the podiatrist. (*Id.* at 67-68.)  This constitutes an explicit reference, by date, to all of Turner's visits to the podiatrist except for his February 15, 2017, visit. (*Compare* DN 11-2, at PageID # 67-68, *with* DN 11-7, at PageID # 462-82, 606-621, 694-709.)  While the ALJ did not reference that visit by date, she did note that Turner had a follow up visit a week after

6

the February 7, 2017, visit and noted that Turner was advised to gradually break in the orthotics and transition from boot to shoes, as well as that no new medications were prescribed to him with a citation to the supporting portions of the February 15, 2017, medical records.  (DN 11-2, at PageID # 67 (citing Ex. 3F/8, 10); DN 11-7, at PageID # 469, 471.)  Each citation to Turner's records for a particular date was accompanied by a summary of findings from that visit.  As an overall summary of the records, the ALJ noted that Turner had diagnosis of idiopathic gout in the left ankle and foot; hammer toe of the left foot; pain in the left foot; lesion of plantar nerve in the left, lower limb; and ingrown nail.  (DN 11-2, at PageID # 67.)  The ALJ then concluded that the podiatry records did "not show persistent pain complaints [or] persistent gout manifestations and/or other foot issues."  (*Id.*)  The ALJ found that Turner's "gout and foot issues have not resulted in continual pain or flares but rather have responded positively to treatment measures to include maintenance Allopurinol, Colchicine during gout flares, and occasional steroid injections and callus debridements."  (*Id.* at 69.)  The ALJ also emphasized that Turner's foot issues have largely not interfered with his activities of daily living.  (*Id.*)  The ALJ concluded that though his gout and foot issues have limited his functioning at times and he has a decreased ability to lift and carry objects, Turner "has remained able to stand and walk effectively with normal breaks."  (*Id.*)

Turner argued that the ALJ improperly "parse[d] office visit notes omitting objective findings mitigating against medium work . . . ."  (DN 15, at PageID # 741.)  He stated that the ALJ improperly omitted notations in the medical records regarding complete collapse of Turner's foot from his January 31 and February 7, 2017, visit; notes regarding debridement and that past surgical procedures had helped but nothing lasted or was definitive regarding an August 22, 2017, visit;[3]

---

[3] Turner presented this comment as if it was made as to his foot pain generally, and the ALJ omitted it.  (DN 15, at PageID # 740.)  This is misleading.  The medical record at issue actually states, "Pt states his right 5th toe has been bothering him. He feels that there is a lot of pressure being put on the toe. [P]ast debridements have helped but nothing has lasted or been definitive . . . ."  (DN 11-7, at PageID # 606.)  Accordingly, the omission of the comment from the

findings of contracture in certain visits; and a notation of clicking in the left forefoot and severe pain at left third interspace during his May 30, 2018, visit. (*Id.* at 739-41.) While the ALJ's description did omit the findings listed by Turner in his brief, the undersigned fails to find the omission significant given that Turner did not specifically connect the omitted findings to a need for greater limitations than those imposed by the ALJ. Turner likewise failed to point to any evidence in the record that any treatment provider had imposed any work-related limitations on him with respect to the exam notes not discussed by the ALJ. Turner also alleged that the podiatry records do not support Turner's ability to do sustained work and demonstrate that Turner would miss work due to his foot problems. (*Id.* at 742.) Though Turner criticized the ALJ's summary of his podiatry records with regard to his gout flare ups, the ALJ did note that Turner reported gout flare ups on occasion to his doctor. (DN 11-2, at PageID # 67-68.) The ALJ simply concluded that those flare ups did not occur often enough to prevent Turner from engaging in work consistent with the RFC she detailed. (*Id.* at  69 ("The foregoing evidence suggests the claimant's gout and foot issues have not resulted in continual pain or flares but rather have responded positively to treatment measures . . . .").) In view of the ALJ's detailed narrative summary of Turner's treatment records and his subjective complaints, the undersigned finds that the ALJ cited to evidence adequate to support her RFC determination, including her conclusion that Turner was capable of performing medium work for the duration required by the regulations. Because the undersigned has determined that the ALJ's decision is supported by substantial evidence, the undersigned may not inquire as to whether there is substantial evidence to support the opposition conclusion. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. *See also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545

---

ALJ's discussion appears insignificant given that Turner did not specifically connect problems with his right fifth toe to any need for greater limitations than those imposed by the ALJ.

(6th Cir. 1986)) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

Turner also argued that the ALJ's discussion of his physical RFC did not contain a sufficient narrative discussion in compliance with SSR 96-8p regarding his ability to stand and walk, lift and carry twenty-five pounds for an eight-hour work day, five days a week.  (DN 15, at PageID # 739-43.)  SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims,  61 Fed. Reg. 34,474, 34,478 (July 2, 1996).  It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual.  *Id.* at 34,477.  Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull.  *Id.*  However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Given the detail in which the ALJ discussed Turner's records and the medical findings she found significant as set forth above, the undersigned finds the ALJ properly complied with the requirements of SSR 96-8p

Turner also argued that the ALJ improperly relied on Turner's activities of daily living as evidence he could perform work on a sustained basis.  (DN 15, at PageID # 743.)  Turner questioned how the fact that the ALJ concluded that Turner could "cook, clean, wash clothes, grocery shop, walk[,] enjoy [his] kids[,] and help [his] sick grandmother" impacted his ability to "stand for six of eight hours while lifting and carrying 25 pounds." (*Id.*)  In evaluating a claimant's symptoms, including, pain, an ALJ is permitted by the applicable regulations to consider a

claimant's activities of daily living.  20 C.F.R. § 416.929(c)(3)(i).  In referencing Turner's activities of daily living, the ALJ stated that "[h]is gout flares have not prevented him from performing a good range of routine, ordinary daily living tasks, and more than once he has apprised physicians that his activities are normal."  (DN 11-2, at PageID # 69.)  Based on this statement, the ALJ appears to have relied on Turner's activities of daily living in discounting Turner's testimony regarding the effects of his gout flare ups, not necessarily in direct support of her RFC determination or Turner's ability to work on a continuous basis.  Turner provides no authority suggesting this was improper save for a citation to *Walston v. Garner*, 381 F.2d 580 (6th Cir. 1967).  However, *Walston* is factually distinguishable from the instant case.  In *Walston*, the claimant complained of continuous pain and the Sixth Circuit found that his complaints were consistent with the medical evidence of record.  *Id.* at 586 ("The appellant testified that he suffers intense pain with movement.  This testimony was confirmed by every doctor who examined him.").  Here, Turner's medical records do not contain support for the same level of pain while performing daily activities as the claimant in *Walston*.  *Id.* at 586 (reciting that the claimant's daily activities did not indicate that the claimant "possesses an ability to engage in substantial gainful activity" because claimant's daily activities were "intermittent and not continuous, and [were] done in spite of the pain suffered by [claimant]").  Because Turner has not offered authority suggesting the ALJ's reasoning was improper and because the undersigned has already found above that the ALJ supported her RFC determination with substantial evidence, the undersigned finds no error in the ALJ's treatment of Turner's activities of daily living.

Accordingly, the undersigned finds that Turner has failed to demonstrate any error in the ALJ's determination of his physical RFC.

### 2.      Mental RFC Determination

Turner argued that the ALJ's RFC finding regarding his mental abilities was unsupported by substantial evidence.  The undersigned will address Turner's arguments regarding the ALJ's mental RFC determination separately below.

#### a)      Mental RFC Generally

The ALJ found that Turner had the mental RFC to "perform simple, routine tasks"; "occasionally interact with supervisors and coworkers"; "never interact with the public"; and "tolerate occasional workplace changes as long as they were gradually introduced."  (DN 11-2, at PageID # 64.)   As with Turner's physical RFC and his podiatry records, in support of her determination of Turner's mental RFC, the ALJ extensively discussed Turner's mental health treatment records.  (*Id.* at 69-72.)  The ALJ individually discussed, with reference to specific dates, the findings from Turner's May 15, 2017; June 19, 2017; September 11, 2017; September 29, 2017; November 6, 2017; November 17, 2017; November 27, 2017; December 20, 2017; January 16, 2018; March 2, 2018; March 21, 2018; and April 5, 2018, visits to Centerstone/Seven Counties. (*Id.*)  For each date, the ALJ summarized the pertinent medical findings and Turner's own description of his symptoms and mental status.  (*Id.*)  This constitutes a specific reference and summary to all of Turner's Centerstone/Seven Counties visits except a September 13, 2017 visit, which did not contain any pertinent information that was different from that already discussed by the ALJ regarding the remaining records.  (*Compare* DN 11-7, at PageID # 497-98, *with* DN 11-2, at PageID # 69-72.)

In her discussion of those records, the ALJ noted that Turner reported "paranoia, anxiety attacks, focus issues, trust issues, and being defensive" or similar symptoms on numerous occasions.  (DN 11-2, at PageID # 69 (5/15/2017); *id.* (noting Turner's reports of anxiety during

6/19/2017 visit); *id.* at 70-71 (noting Turner's reports of "feeling anxious and worrying all the time" and "isolating and feeling uncomfortable around others" during 9/11/2017 visit); *id.* at 71 (noting Turner's reports of anxiety and "fear of retribution" during 11/6/2017 visit); *id.* at 71 (noting Turner's reports of "fears of being harmed" and "visions of getting shot" during 11/27/2017 visit).)  The ALJ also noted that Turner reported his mood as depressed and anxious on multiple occasions.  (*Id.* at 69 (5/15/2017); *id.* at 70-71 (9/11/2017); *id.* at 71 (3/21/2018).)  The ALJ emphasized that Turner's examiners repeatedly found him to be "clean and appropriately dressed, articulate, and fully alert with fair judgment and insight."  (*Id.* at 69 (5/15/2017); *id.* at 70 (noting findings that Turner was "appropriately dressed and well groomed" during 9/11/2017 visit); *id.* at 71 (noting findings that Turner "dressed appropriately"; had articulate speech; and "[i]nsight and judgment were fair" during 11/17/2017 visit); *id.* at 71 (noting "appropriate dress, good judgment and insight" during 11/27/2017 visit).)  The ALJ also emphasized that Turner repeatedly denied psychosis and symptoms of psychosis to treatment providers.  (*Id.* at 69 (5/15/2017); *id.* at 70 (noting that Turner "denied thoughts of self-harm or symptoms of psychosis" during 9/11/2017 visit); *id.* at 71 (11/17/2017); *id.* at 71 (11/27/2017); *id.* at 71 (noting that Turner showed "no indication of delusions or psychosis" during 3/21/2018 visit).)  The ALJ highlighted that examiners found Turner to have "no deficits in memory, attention, or concentration" on multiple occasions.  (*Id.* at 69 (5/15/2017); *id.* at 71 (11/17/2017); *id.* at 71 (11/27/2017); *id.* at 71 (3/21/2018).)  The ALJ also emphasized that Turner reported improvements in his symptoms after starting medications as a result of his September 11, 2017, visit.  (*Id.* at 71 (9/11/2017); *id.* at 71 (11/17/2017); *id.* at 71 (noting that Turner reported that "he believed he was improving on his present drug regimen" during 12/20/2017 visit).)  The ALJ also noted that examiners reported Turner to have intact thought processes and/or no perceptual distortions on multiple occasions.

(*Id.* at 71 (11/17/2017); *id.* at 71 (noting finding of "unremarkable thought content" during 11/27/2017 visit); *id.* at 71 (noting finding that "thought process content was unremarkable" during 3/21/2018 visit).)

The ALJ also summarized the results from a July 27, 2017, psychological consultative examination by Dr. Daniel A. Miller ("Dr. Miller") as part of her findings. (*Id.* at 70.) She noted that Turner reported to Dr. Miller fear for his life, paranoia, and nervousness, as well as panic attacks. (*Id.*) She summarized that Dr. Miller found that Turner had logical and linear thinking; "demonstrated a working knowledge of person, time, place and circumstances"; "was able to process instructions, sequence, transition, advocate for himself and make informed decisions"; showed good insight and appropriate judgment; initiated conversation; "engaged in effective eye contact"; and was able to establish rapport. (*Id.*) She noted that Dr. Miller found that Turner had poor concentration but responded well to redirection." (*Id.*) The ALJ's assessment of Dr. Miller's opinions will be discussed in more detail in Section II(C)(2)(c) *infra*.

Finally, elsewhere in her opinion, in assessing whether Turner's impairments met any listing, the ALJ had determined that Turner had a moderate limitation in the area of interacting with others. (*Id.* at 63.) While the ALJ noted that Turner reported feeling paranoia and being hypervigilant; was moody and labile in his behavior; possessed a low frustration tolerance; and possessed a "hair trigger" temper, Turner's testimony regarding time spent with family members and daily activities were not consistent with those symptoms. (*Id.*) She noted that Turner was "well vested in his children," did activities with them, and was close with his grandmother and siblings. (*Id.*) She noted that medical records often described Turner as "polite and cooperative"; [h]e has established good rapport with medical providers . . ."; he "has demonstrated good

interactions with non-medical staff"; and that Turner "related well during the hearing, and was pleasant and respectful." (*Id.*)

The ALJ concluded that Turner's treatment records have "largely shown no deficits in cognition, memory, attention, or concentration" and that despite Turner's "reasonable" complaints of paranoia and hypervigilance "given his history, exams have not further shown any indications of significant distraction, nor hallucinations, delusions, or other psychotic symptoms." (*Id.* at 72.) The ALJ emphasized that Turner's activities of daily living were "wide and varied" and "somewhat inconsistent with his assertions of social isolation." (*Id.*)  The ALJ cited that he demonstrated improvement with medication. (*Id.*)  The ALJ concluded that the record "portray[ed] less intensity and extent of limitation than Mr. Turner assert[ed]." (*Id.*)  Based upon the ALJ's thorough discussion of the relevant records, the undersigned finds that the ALJ cited to evidence in the record adequate to support her conclusion as to Turner's mental RFC.

Turner argued that the ALJ's conclusion regarding his PTSD was not supported by substantial evidence.  Specifically, he alleged that his PTSD would result in increased "vigilance, fear, and distrust" and that his "fear, vigilance, paranoia, isolation and distrust of others" would prevent him from working with others and concentrating.  (DN 15, at PageID # 746.)  He argued that his treatment records portrayed a more varied picture of his mental health.  However, Turner's argument amounts to nothing more than an attempt to point to contrary evidence in the record.  As explained above, once the Court has determined that the ALJ's decision is supported by substantial evidence, it may not inquire as to whether there is substantial evidence to support the opposition conclusion.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108.  Accordingly, the undersigned finds that Turner has failed to demonstrate that the ALJ's determination of his mental RFC was not supported by substantial evidence.

14

### b)        Reliance on "Physical" Health Records

As partial support for her determination of Turner's mental RFC, the ALJ cited to medical

records from Turner's treatment "for various physical complaints throughout 2016 and early 2017"

and noted that those records "did not show mental status complaints or abnormalities."  (DN 11-

2, at PageID # 69.)  She noted that Turner

> presented as alert, cooperative, and fully oriented with normal mood, affect,
> behavior, judgment, and thought content normal.  His depression screenings in
> November and December 2016 were negative.  Though on January 1, 2017 he
> reported to primary care that he was depressed, and while he was given psychiatric
> referral, his mental status findings remained normal.  When seen later for his foot
> complaint in February 2017, his mental status was normal.  More recent primary
> care exams in March and May 2018 noted normal mental status findings.

(*Id.* (citations omitted))  Turner argued that the ALJ improperly cited to these records and used

"specious" reasoning.  (DN 15, at PageID # 744.)  Turner alleged that it was error for the ALJ to

imply that if Turner's mental symptoms were as bad as he said that he would have also reported

them to his "physical health doctor[s]."  (*Id.*)  Turner argued that the ALJ did not discuss what

mental health questions were part of a "physical examination protocol" that would trigger a

discussion of Turner's symptoms.  (*Id.* at 744-45.)

Though Turner criticized the ALJ for not citing any authority to support her use of Turner's

description of his mental health status to physicians treating his physical ailments, Turner likewise

cited no evidence that it was error for the ALJ to rely on the same.  The applicable regulations

indicate that a claimant's RFC will be assessed on the basis of "all the relevant evidence in [the]

case record" and does not explicitly limit the ALJ to considering particular records for particular

purposes.  20 C.F.R. § 416.945.  In view of the fact that the ALJ did not rely solely on the

descriptions of Turner's mental condition and status found in the records from physicians treating

his physical ailments, but instead, properly considered all medical evidence, including the evidence

from physicians treating his mental conditions, the undersigned finds Turner has failed to demonstrate any error by the ALJ as to this issue.

### c)     Improper Assessment of Opinion Evidence

Turner also argued that the ALJ erred in her assessment of the opinions of Dr. Miller, Dr. Stephanie Hall ("Dr. Hall"), and the state agency physicians as to their opinions regarding Turner's mental impairments.  (DN 15, at PageID # 746-49.)  Turner alleged that the ALJ "did not apply the regulations that apply to all opinion evidence" citing 20 C.F.R. § 416.927(e)(2)(ii).[4]  (*Id.* at 749.)  However, 20 C.F.R. § 416.927 only applies to the assessment of opinion evidence for claims filed *before* March 27, 2017. 20 C.F.R. § 416.927 (2019).   The new regulations for evaluating medical opinions are applicable to Turner's case because he filed his application *after* March 27, 2017.[5]  (DN 11-5, at PageID # 232-37.)  To the extent Turner intended his one-sentence reference to the old standard for evaluating medical opinion evidence to be an argument that the ALJ should have applied that standard, the undersigned finds Turner's perfunctory argument waived.  *See Layne*, 192 F.3d at 567 (quoting *McPherson*, 125 F. 3d at 995-96); *Rice*, 169 F. App'x at 454.

Pursuant to 20 C.F.R. § 416.920c, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[6]  20 C.F.R. § 416.920c(a).  Instead,  an ALJ will evaluate the "persuasiveness" of a medical

---

[4] The Commissioner's brief also contained references to 20 C.F.R. § 416.927 and other references to the old rules that apply to opinion evidence such as an argument that the ALJ gave "good reasons" for discounting the opinion of Turner's treating physician, Dr. Hall.  (DN 19, at PageID # 767, 769.)

[5] That the ALJ applied the new regulations is evident from an examination of the ALJ's opinion because she did not ascribe weight to any particular medical source's opinion and instead cited the language of the new regulations.  (DN 11-2, at PageID # 72-73, 72 ("As for medical opinion(s) and prior administrative medical findings, we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources.").)  Both Turner's counsel and the Commissioner are cautioned to be careful in future filings that they are citing the correct authority applicable to a claimant's case given the possibility of intervening changes in applicable regulations.

[6] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 416.927(c)(2).

16

opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(a), (c).  The regulation provides that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . ."  20 C.F.R. § 416.920c(a), (b)(2).  However, the regulation states that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[7] specialization, and other factors.[8]  20 C.F.R. § 416.920c(b)(1)-(2).  Where two medical opinions reach different conclusions but are equally "well-supported . . . and consistent with the record," the ALJ is required to state how he or she considered the other three factors in making his or her decision.  20 C.F.R. § 416.920c(b)(3).

The Court will individually consider Turner's allegations of error with respect to the different medical source opinions below.

### (1)    Dr. Miller's Opinion

The ALJ found the consultative exam of Dr. Miller "somewhat persuasive."  (DN 11-2, at PageID # 72.)  The ALJ stated that Dr. Miller's conclusions that Turner is "of suspected middle average cognitive ability"; his "memory, reasoning skills, and problem solving are intact"; Turner retains the ability to "understand, retain, and process instructions"; Turner can "advocate for

---

[7] In assessing this factor, the regulation requires an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 416.920c(c)(3)(i)-(v).

[8] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. § 416.920c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  *Id.*

himself and make informed decisions"; and Turner "is capable of managing funds" were consistent with the record. (*Id.* at 72-73.) She found Dr. Miller's determination that Turner's "concentration was erratic" to be inconsistent with the record, which she determined supported "no deficit in attention, concentration, or memory." (*Id.* at 72.) She concluded that Dr. Miller's conclusions regarding Turner's temper were unsupported by both the physical and mental status exams in the record. (*Id.* at 72-73.) She found Dr. Miller's determination that Turner could not move and manipulate objects for sustained periods to be unsupported by the record and "beyond [Dr. Miller's] area of expertise." (*Id.* at 73.) She also disputed Dr. Miller's determination of Turner's ability to deal with stress and pressure and found that Miller had improperly accepted Turner's own recitation of his limitations, as well as that the same was inconsistent with the record. (*Id.* at 73.)

Turner argued that Dr. Miller's finding regarding Turner's concentration and ability to maintain attention was supported by the record. (DN 15, at PageID # 746.) He cited to a May 15, 2017, record from Turner's treatment at Centerstone in which it listed Turner's affect and mood as anxious and his attention/concentration as "easily distracted" and "impaired focus/attention." (*Id.* at 746-47; DN 11-7, at PageID # 509, 647.) He argued that this record "substantially detract[ed]" from the ALJ's conclusion regarding his concentration and attention, especially because a copy of the medical record appeared twice in the administrative record.[9] (DN 15, at PageID # 747.) However, Turner offered no support for his legal conclusion that one mention of a particular condition in a claimant's medical history constitutes substantial evidence to support the existence of a limitation even in the presence of contradictory findings. Turner likewise provided no citations to similar records or findings regarding problems with concentration and

---

[9] Turner's comment appears to imply that it was more outrageous for the ALJ to "miss" the finding since it appeared twice in the record.

attention elsewhere in the case record.  In finding Dr. Miller's conclusion unsupported by the record, the ALJ cited to "the mental status exams of record" in Exhibits 5F, 13F, and 16F.  (DN 11-2, at PageID # 72.)  Turner's argument ignores that these records contain numerous notations finding Turner to have "no deficits" in attention and concentration, including several dated after Dr. Miller's July 20, 2017, examination.  (*See* DN 11-7, at PageID # 519 (6/19/2017); *id.* at 529 (9/11/2017); *id.* at 523, 652 (11/17/2017); *id.* at 514 (11/27/2017); *id*. at 521, 525 (12/20/2017); *id.* at 690 (3/21/2018).)  Accordingly, the undersigned finds Turner's citation to a single contrary mental status exam to be without merit and to demonstrate no error in the ALJ's findings regarding the persuasiveness of Dr. Miller's opinion.

Turner next contended that it was error for the ALJ to discount Dr. Miller's findings regarding Turner's temper control for lack of supporting evidence in the record.  (DN 15, at PageID # 747.)  He contended that the ALJ was improperly injecting a medical opinion into the record, citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006).  (*Id.*)  *Meece* is distinguishable because in *Meece*, the Sixth Circuit, citing precedent, explained that an "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."  *Meece*, 192 F. App'x at 465.  In *Meece*, the ALJ had relied on the fact that Meece's doctors had failed to prescribe certain medications as evidence that Meece's pain was not as severe as claimed.  *Id.*  Here, the ALJ merely noted that Dr. Miller's conclusions were not supported by the other medical evidence in the record, a statutory factor the ALJ was required to consider and discuss in assessing the persuasiveness of Dr. Miller's opinion. *See* 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."); 20 C.F.R § 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").  Because the ALJ was merely applying the proper regulatory factors, the undersigned finds Turner's argument to be without merit and to again demonstrate no error in the ALJ's findings regarding the persuasiveness of Dr. Miller's opinion.

Finally, Turner challenged the ALJ's criticism that "Dr. Miller seemed to accept the claimant's assertions that he could not negotiate the stress and pressure in a typical workday due to both physical and mental demands," arguing that the same was error because the Sixth Circuit has recognized that it is proper to consider the combined effects of a claimant's physical and mental impairments.  (DN 15, at PageID # 747 (quoting DN 11-2, at PageID # 73).)  Turner's argument is a non-sequitur and entirely misconstrues the ALJ's point regarding Dr. Miller's opinion accepting Turner's own recitation of his limitations.  Turner provided no pertinent authority that the ALJ was not permitted to assess and rely on that fact in determining the persuasiveness of Dr. Miller's opinion, nor could he given the ALJ was required to assess the supportability of Dr. Miller's opinion pursuant to the regulatory factors.  *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.").

The undersigned finds that the ALJ properly considered Dr. Miller's opinion pursuant to the directives of 20 C.F.R. § 416.920c and, thus, that Turner has failed to demonstrate reversible error as to the ALJ's assessment of Dr. Miller's opinion.

### (2)    Dr. Hall's Opinion

The ALJ found the mental RFC assessment by psychiatrist Dr. Hall to be "not persuasive." (DN 11-2, at PageID # 73.)  Dr. Hall found that Turner could only sometimes satisfactorily

remember locations and work-like procedures; understand and remember short, simple instructions; understand and remember detailed instructions; and "adhere to basic standards of neatness and cleanliness.  (DN 11-7, at PageID # 601-02.)  Dr. Hall then found that Turner had "[n]o useful ability to function" in all but one of the remaining listed categories including his ability to carry out detailed instructions; maintain attention and concentration for extended periods; maintain regular attendance; sustain a routine without supervision; make simple work-related decisions; perform at a consistent pace; interact appropriately with the public; accept instructions; respond appropriately to criticism from supervisors; get along with co-workers and peers; and respond appropriately to changes in the work setting.  (*Id.*)  The ALJ found that "neither the treatment records nor the evidence as a whole support[ed] this degree of functioning," specifically noting that Turner's mental health records showed "intact cognition, concentration, memory, judgment[,] and insight."  (DN 11-2, at PageID # 73.)  She also cited again to Turner's description of his mental status to physicians treating his physical impairments and noted that these findings were inconsistent with Turner's daily activities.  (*Id.*)

Turner contended that the ALJ improperly "played doctor" in her interpretation of his mental health records by equating "cognition, concentration, memory, judgment and insight" with Turner's ability to tolerate stress and get along with coworkers.  (DN 15, at PageID # 748.)  He also disputed how his diagnoses of PTSD and bipolar disorders connect with "cognition, concentration, memory, judgment and insight."  (*Id.*)  This argument willfully misreads the ALJ's analysis, which did not specifically connect these items but rather cited to the findings in Turner's mental health records as being generally inconsistent with Dr. Hall's conclusion.  The ALJ then separately noted that Turner's records reflected both "observations of depression and anxiety" and "intact cognition concentration, memory, judgment and insight."  (DN 11-2, at PageID # 73.)  The

latter is specifically at odds with a number of Dr. Hall's opined limitations, including, but not limited to, her determination that Turner could not maintain attention and concentration. The ALJ's analysis was, thus, consistent with the requirements of 20 C.F.R. § 416.920c. Accordingly, the undersigned finds that Turner has not demonstrated that the ALJ improperly assessed the persuasiveness of Dr. Hall's opinion pursuant to the applicable regulations.

### (3)    State Agency Physicians

Turner also argued that it was improper for the ALJ to accept the opinions of the state agency physicians even though medical evidence came in after they rendered their opinions and thus "[t]heir opinions were not based on the record as a whole." (DN 15, at PageID # 749.) Turner also challenged the state agency physicians' determinations regarding his gout flare ups. (*Id.*) While 20 C.F.R. § 416.920c instructs the ALJ to consider other factors including whether evidence received after a "medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," the ALJ is not automatically required to discuss the same in his or her opinion. 20 C.F.R. § 416.920c(b)(2), (c)(5). Turner has offered no specific evidence subsequent to their determinations with which the state agency physicians' opinions were inconsistent except evidence regarding his gout flare ups. The undersigned has already found above that the ALJ's assessment of Turner's physical RFC regarding his podiatry records, including his gout flare ups, was supported by substantial evidence. For this reason and because Turner has not pointed to any specific violation of 20 C.F.R. § 416.920c regarding how an ALJ considers a medical source's opinion, the undersigned finds Turner's arguments to be without merit.

### d)    Third-Party Report of Turner's Grandmother

Finally, Turner contended that the ALJ "committed an error of law when she rejected the third-party report of Turner's grandmother. (DN 15, at PageID # 749.) Turner cited to 20 C.F.R.

§ 416.929(c)(3) in support of this contention and argued that the ALJ's failure to properly comply with this regulation was a violation of Turner's due process rights.  (*Id.*)

20 C.F.R. § 416.929(c)(3) provides that the ALJ will "carefully consider any other information [a claimant] may submit about [his or her] symptoms," including information provided by both medical and nonmedical sources.  20 C.F.R. § 416.929(c)(3).  The regulations require the ALJ to take "into account" in reaching a conclusion about whether a claimant is disabled "any symptom-related functional limitations and restrictions that [a claimant's] . . . nonmedical sources report" if those limitations "can be reasonably accepted as consistent with the objective medical evidence and other evidence . . . ."  *Id.*

In the instant case, Turner's grandmother filled out a third party function report regarding Turner's symptoms.  (DN 11-6, at PageID # 303-11.)  With regard to this report, the ALJ stated,

> [C]onsideration has been given to the third party function report as set forth by the *claimant's grandmother in Ex. 7E*; however, this report is not wholly persuasive as Ms. Turner is not a medical expert and the limited degree of functioning she has described is somewhat inconsistent with the objective record and the claimant's own self-described functioning.

(DN 11-2, at PageID # 73-74 (emphasis added).)  Based on the ALJ's own description of the report, the undersigned finds that the ALJ did not fail to *consider* the report as required by 20 C.F.R. § 416.929(c)(3), she simply found the same unpersuasive.  While Turner is correct that the regulations do not require the source of a nonmedical opinion to be a medical expert, Turner cited no authority prohibiting an ALJ from noting a nonmedical source's lack of expertise as part of his or her consideration of that opinion.  All that is required is that an ALJ consider the opinion and an ALJ may properly discount an opinion pursuant to 20 C.F.R. § 416.929(c)(3) if the same is inconsistent with the other evidence in the record.  This is what the ALJ did in Turner's case.  As to Turner's argument that the ALJ failed to specifically identify that functioning she found

inconsistent with the evidence of record, Turner likewise did not identify any evidence to rebut the ALJ's conclusion. Additionally, the undersigned finds *United States v. Wilson*, 378 F.3d 541, 546 (6th Cir. 2004), cited by Turner in support, wholly distinguishable from the instant case. *Wilson* involved an ALJ's failure to give good reasons for rejecting the opinion of a treating physician under the old regulations governing the ALJ's review of medical opinion evidence. *Id.* Turner points to no requirement that the ALJ specifically discuss a third-party function report in the manner described in *Wilson*, nor any other authority requiring a more detailed or extensive discussion than the one provided by the ALJ in the instant case.

Because the ALJ's opinion specifically states that she considered the third party function report by Turner's grandmother and found it not persuasive for reasons permitted by the regulations, the undersigned finds Turner has failed to demonstrate a violation of 20 C.F.R. § 416.929(c) or any other applicable law.

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

August 11, 2020

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).