UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00318-GNS-CHL

RASHON TURNER                                                                                        PLAINTIFF

v.

ANDREW SAUL, Commissioner
Social Security Administration[1]                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Objection (DN 21) to the Magistrate Judge's Findings of Fact, Conclusions of Law and Recommendation (DN 20). For the reasons stated below, Plaintiff's Objection is **OVERRULED**, and the Magistrate Judge's R&R is **ADOPTED**.

### I.  BACKGROUND

On April 20, 2017, Plaintiff Rashon Turner ("Turner") protectively filed an application for Supplemental Security Income.[2] (Administrative R. 15, 69, 87, 185-190 [hereinafter Admin. R.]). Turner alleges that he became disabled on April 1, 2017, as a result of posttraumatic stress disorder, gout, leg issues, and depression. (Admin. R. 69, 87). Administrative Law Judge Susan Brock

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party, pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] In Turner's application for Supplemental Security Income, the document was dated April 24, 2017 and reads "On April 24, 2017, you applied for Supplemental Security Income . . . ." (Admin. R. 185). However, subsequent disability determinations, both at the initial and reconsideration phase, as well as the ALJ's report, stated Turner's claim for disability was filed on April 20, 2017. (Admin. R. 15, 31, 69, 87). Conversely, Turner's Fact and Law Summary lists his date of application as April 24, 2017. (Pl.'s Fact/Law Summary 1, DN 15). All documents correctly state the alleged onset date of April 1, 2017. (Admin. R. 15, 69, 87, 185). For clarity of the record, the Court will use the April 20, 2017 date as the date Turner's application was filed.

("ALJ") conducted a hearing on July 25, 2018. (Admin. R. 15, 40). Also present in-person was Turner and his attorney Trevor A. Smith, as well as Martha R. Goss, who testified as an impartial vocational expert. (Admin. R. 15, 40).

The ALJ issued a determination on January 4, 2019, finding that Turner has a residual functional capacity ("RFC"):

> to perform medium work . . . except he can only frequently climb ramps, stairs, ladders, ropes, and scaffolds. He could have frequent exposure to fumes, odors, dust, gases, and poor ventilation. He could have frequent exposure to unprotected heights and hazardous machinery. Mentally, he can perform simple, routine tasks; occasionally interact with supervisors and coworkers, but never interact with the public; and can tolerate occasional workplace changes as long as they were gradually introduced.

(Admin. R. 20). As the vocational finding is based upon Turner's RFC, the ALJ relied upon this RFC to find that Turner is capable of performing past relevant work, but if Turner was to return to his work as a picker/packer laborer, he would only be able to complete the work as it is described in the Dictionary of Occupational Titles, not as he previously performed the work. (Admin. R. 30). Therefore, the ALJ concluded that Turner has not been under a disability since the application date. (Admin. R. 31). Turner requested review of the ALJ's determination by the Appeals Council (Admin. R. 183-84), but that review was denied. (Admin. R. 1-5).

The complaint in the present case followed thereafter on April 26, 2019. (DN 1). The case was referred to the Magistrate Judge for consideration and preparation of a report and recommendation. (DN 14). As such, Magistrate Judge Lindsay received Fact and Law Summaries from the parties (DN 15, 16) and ultimately recommended that the Commissioner's decision be affirmed. (R&R 24, DN 20). Subsequently, Turner filed an objection to the Magistrate Judge's R&R. (Pl.'s Obj., DN 21).

## II. JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. *See* 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

The Federal Magistrates Act allows district judges to designate magistrate judges to issue "proposed findings of facts and recommendations for disposition . . . ." 28 U.S.C. § 636(b)(1)(B). The magistrate judge then files a recommendation, to which each party may object within fourteen days. 28 U.S.C. § 636(b)(1). Those parts of the report to which objections are raised are reviewed by the district judge using a *de novo* standard. *Id.*; Fed. R. Civ. P. 72(b). This differs from the standard applied to the Commissioner of Social Security's decision. That decision, rendered by an ALJ, is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). It is "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations omitted). Where substantial evidence supports the ALJ's decision, a Court is obliged to affirm. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted). The Court should not attempt to resolve conflicts of evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The Court may consider any evidence in the record, regardless of whether cited in the 'ALJ's decision. *Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986).

While specific objections are entitled to *de novo* review, "[p]oorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal." *United States v. Mullikin*, No. 5:05–162-JMH, 2013 WL 3107560 (E.D. Ky. June 18, 2013) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). As the Sixth Circuit has noted, "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard*, 932 F.2d at 509).

## IV.   **DISCUSSION**

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 *et seq*. (Title II Disability Insurance Benefits), 1381 *et seq*. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

The ALJ evaluated Turner's claim pursuant to this five-step process. (Admin. R. 17-32). At step one, the ALJ found that Turner had not engaged in substantial gainful activity since the application date. (Admin. R. 17). At step two, the ALJ determined Turner has the following "severe" impairments: posttraumatic stress disorder, bipolar disorder, residuals from gunshot wound to right hip, gout and foot issues, and chronic bronchitis. (Admin. R. 17-18). Turning to the third step, the ALJ concluded that Turner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1. (Admin. R. 18). At the fourth step, the ALJ determined that Turner's RFC consisted of an ability to perform medium work with specified physical and mental limitations. (Admin. R. 20). Additionally, at step four, the ALJ found that Turner is capable of returning to his past work as a kitchen helper or a picker/packer laborer. (Admin. R. 30). As such, the ALJ concluded Turner had not been under a disability, as defined in the Social Security Act, since the application date. (Admin. R. 31).

Turner objects to the Magistrate Judge's R&R in two sweeping areas: (1) the Magistrate Judge's affirmation of the physical RFC determination, under Section II, Part C, Sub-Part 1 of the R&R; and (2) the Magistrate Judge's affirmation of the mental RFC determination, under Section

5

II, Part C, Sub-Part 2 of the R&R. (Pl.'s Obj.). Both areas of objection contain several sub-claims of error. However, the primary claims of error by Turner largely mirror those Turner raised to the Magistrate Judge.

### A.     **Objection 1:  Physical RFC Determination**

In the first half of his argument, Turner asserts four primary grounds for remand:  (1) Turner could not continue substantial gainful employment with his history of absences for medical appointments, gout flare-ups, and Turner's posttraumatic stress disorder; (2) Turner's treatment for flare-ups reflect some limitations that will interfere with his work; (3)  the ALJ's use of Turner's daily activities were non-essential considerations for the RFC; and (4) the ALJ improperly used the Activities of Daily Living ("ADL") in determining Turner's RFC. (Pl.'s Obj. 2-7).

At the onset, the Court notes that it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, No. 05-5572, 2006 WL 463859, at *2 (6th Cir. Feb. 27, 2006). While Turner attempts to claim four sub-areas of error, the primary crux of Turner's objections stem from the ALJ's alleged "fail[ure] to provide an understandable narrative explaining why the frequency and length of Turner's gout flare ups either singly or in combination with his PTSD symptoms allowed sustained work in the ordinary work place 8-hours a day, 5-days per week" (Pl.'s Obj. 13), and the Magistrate Judge's failure to appreciate Turner's arguments about a lack of understandable explanation.  As such, sub-claims 2, 3, and 4, are deemed waived.

Turner testified that he worked as "a picker and a packer" for twelve-hour shifts, where he had to manipulate, carry, and move tools and boxes weighing between fifty to one hundred twenty pounds. (Admin. R. 44-45). Turner claims he was terminated from that position due to his trips to the emergency room for his gout after five or six absences from work. (Admin. R. 45). Turner subsequently worked as a carport sorter, where he lifted comparable weights as when he worked as a picker/packer but left that position due to inconsistent work—not due to his gout. (Admin. R. 45).

During his testimony with the ALJ, Turner testified that he had two to three flare ups a week of his gout, which continued for two to three months. (Admin. R. 53). When he does have a flare up, it can last up to two days. (Admin. R. 55). When the ALJ inquired about Turner's ability to stand, normally and during a gout flare up, Turner responded, "[o]n a good day without a flare up, I would probably if I could stand on my feet for like a good hour or so before I have to sit down, about 25, 30 minutes. On a bad day like it's just hard to stand . . . ." (Admin. R. 56).

The RFC determination measures the most a claimant can still do despite his limitations. 20 C.F.R. § 416.945(a)(1). This determination is ultimately left up to the ALJ. 20 C.F.R. § 416.946(c). Assessing a claimant's subjective allegations is an integral step in making the RFC finding. 20 C.F.R. § 404.1529(a). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. *Id.* In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986), applies. First the ALJ must examine whether there is objective medical evidence of an underlying medical

condition. *See id*. at 853. If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

The ALJ, in formulating Turner's physical RFC, considered Turner's testimony about his work as a picker/packer and as a carport sorter. (Admin. R. 21; *see also* Admin. R. 44-45). Turner was able to lift up to one hundred twenty pounds at both jobs. (Id.). Further, when reviewing the medical records detailing Turner's issues with gout, the ALJ noted twelve of Turner's thirteen visits to the podiatrist and detailed the events of each visit. (Admin. R. 23-25, 413-32, 557-72, 645-60). Ultimately, the ALJ concluded that medical records "do not show persistent pain complaints nor persistent gout manifestations and/or other foot issues." (Admin. R. 23). The records document Turner's foot pain during his visit to the podiatrist on July 20, 2017, but further reflected his ability to:

> Cook, clean, wash clothes, grocery shop, walk, enjoy his kids, and help his sick grandmother. Though he reported he could not walk for very long, wear shoes too long because of foot pain, run or play basketball, or work in a warehouse or any physical job, he stated he liked to take his children places, play flag football, play video games, go to the music store, play paintball, and go to cookouts.

(Admin. R. 24 (citing Admin. R. 436)). Further, at his follow-up appointment on September 5, 2017, Turner "was doing well, denied pain, and reported he was wearing normal shoes with no limitation in activity or footwear." (Admin. R. 24 (citing Admin. R. 561)).

As for limitations from Turner's gout, the ALJ reviewed the record and appointment notes, as well as Turner's own testimony, and stated that "[t]hese conditions would not require further reduction in the assessed residual functional capacity for medium work with no more than frequent postural actions and no more than frequent exposure to work hazards." (Admin. R. 25). The ALJ

8

concluded that although Turner was "somewhat limited at times by gout and feet issues, and that [Turner's] ability to lift and carry objects is decreased, he has remained able to stand and walk effectively with normal breaks." (Admin. R. 25).

Throughout the colloquy with the ALJ, Turner never mentioned, nor did records indicate, that Turner had issues with his co-workers, even with his posttraumatic stress disorder. Instead, only Dr. Miller opined that Turner has a "hair trigger" towards explosive confrontations— supported solely by Turner's report of such—and questioned whether Turner could facilitate productive work relationships with coworkers and supervisors. (Admin. R. 28-29, 434-42). However, the ALJ took these opinions and fears into consideration when crafting the RFC, which allowed "occasional[] interact[ion] with supervisors and coworkers, but never [] with the public." (Admin. R. 20).

Turner argues, based on his gout flare ups and his posttraumatic stress disorder, that he would not be able to return to his prior employment. He continually references the medical visits for gout, which appeared only periodically and soon subsided. Turner's medical records, however, show multiple instances where Turner had no flare ups or pain. As the ALJ noted, Turner still would be able to stand and walk effectively with normal breaks. While Turner's posttraumatic stress disorder will be discussed more thoroughly below, when considering Turner's interactions with his coworkers, supervisors, and the public, the ALJ's RFC determination aptly takes into account and applies Turner's posttraumatic stress disorder, in addition to Turner's anxieties and fears of the public.

Turning to the Magistrate Judge's examination of the ALJ's determination, the Magistrate Judge enumerated all the podiatry visits in Turner's record. (R&R 6-7) The Magistrate Judge even observed the ALJ omitted a visit to the podiatrist on February 15, 2017, but the ALJ "did

note that Turner had a follow up visit a week after the February 7, 2017, visit and noted that Turner was advised to gradually break in the orthotics and transition from boot to shoes, as well as that no new medications were prescribed to him with a citation to the supporting portions of the February 15, 2017, medical records." (R&R 6-7 (citation omitted)). Further, the Magistrate Judge indicated that "[e]ach citation [in the ALJ's determination] to Turner's records for a particular date was accompanied by a summary of findings from that visit." (R&R 7).

The Magistrate Judge reviewed the ALJ's conclusion that Turner "had a diagnosis of idiopathic gout in the left ankle and foot; hammer toe of the left foot; pain in the left foot; lesion of plantar nerve in the left, lower limb; and ingrown nail." (R&R 7 (citing Admin. R. 23)). But the ALJ also concluded that "the podiatry records did not show persistent pain complaints [or] persistent gout manifestations and/or other foot issues." (R&R 7 (internal quotation marks omitted) (citing Admin. R. 23)). As such, the Magistrate Judge recounted the ALJ's determination "that Turner's gout and foot issues have not resulted in continual pain or flares but rather have responded positively to treatment measures to include maintenance Allopurinol, Colchicine during gout flares, and occasional steroid injections and callus debridements[,]" and that "Turner's foot issues have largely not interfered with his activities of daily living." (R&R 7 (internal quotation marks omitted) (citing Admin. R. 25)). In a footnote, the Magistrate Judge confronted a claim by Turner that the ALJ omitted a crucial note that "debridement and that past surgical procedures had helped but nothing lasted or was definitive." (R&R 7 n.3). The Magistrate Judge cast aside Turner's contention as a misleading characterization of the evidence because "Turner did not specifically connect problems with his right fifth toe to any need for greater limitations than those imposed by the ALJ." (R&R 7 n.3, 778).

When reviewing Turner's contentions, the Magistrate Judge opined:

10

>Turner likewise failed to point to any evidence in the record that any treatment provider had imposed any work-related limitations on him with respect to the exam notes not discussed by the ALJ. Turner also alleged that the podiatry records do not support Turner's ability to do sustained work and demonstrate that Turner would miss work due to his foot problems. Though Turner criticized the ALJ's summary of his podiatry records with regard to his gout flare ups, the ALJ did note that Turner reported gout flare ups on occasion to his doctor. The ALJ simply concluded that those flare ups did not occur often enough to prevent Turner from engaging in work consistent with the RFC she detailed. In view of the ALJ's detailed narrative summary of Turner's treatment records and his subjective complaints, the undersigned finds that the ALJ cited to evidence adequate to support her RFC determination, including her conclusion that Turner was capable of performing medium work for the duration required by the regulations.

(R&R 8 (internal citations omitted)). Based on all the information presented, the Magistrate Judge found "that the ALJ cited to evidence adequate to support her [physical] RFC determination, including her conclusion that Turner was capable of performing medium work for the duration required by the regulations." (R&R 8). The ALJ's ruling is supported by substantial evidence, and the Magistrate Judge's conclusion in this respect is well-founded.

Therefore, Turner's objection to the Magistrate Judge's findings, related to the ALJ's determination of Turner's physical RFC, is overruled.

### B.     Objection 2:  Mental RFC Determination

In the second part of his argument, Turner looks to the mental RFC determination in asserting five more sub-claims of error: (1) the ALJ's and Magistrate Judge's determinations lacked sufficient discussion regarding the impact of Turner's hypervigilance and posttraumatic stress disorder in crafting the mental RFC, especially in light of the references to Turner's appearance and general disposition; (2) the Magistrate Judge rejected Turner's argument as to Dr. Miller's conclusion regarding his attention, concentration, and focus problems, because "there is only one instance that the treating source noted such a problem and there is no legal citation that a

11

single note has significant weight in light of contradictory evidence" (Pl.'s Obj. 10 (referencing R&R 8-9)); (3) the ALJ erred in rejecting the opinion of Dr. Miller simply because "her opinion . . . relied too heavily on Turner's assertions" (Pl.'s Obj. 10 (referencing Admin. R. 29)); (4) the Magistrate Judge and the ALJ both allegedly erred in rejecting a third-party report by Turner's grandmother due to her not being a medical expert; and (5) the Magistrate Judge allegedly did not assess how the RFC found by the ALJ took into account the combined effect of Turner's physical and mental impairments . . . ." (Pl.'s Obj. 12).

Similar to the previous objection, there is only one primary argument, surrounded by claims raised in a perfunctory manner, attempting to supplement Turner's primary argument. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir.1999). Turner's contention in Objection 2 is the ALJ "did not correctly evaluate Turner's posttraumatic stress disorder symptoms and their effect" in determining Turner's mental RFC, and the Magistrate Judge failed to appreciate Turner's arguments about an improper mental RFC determination. (Pl.'s Obj. 10). Therefore, sub-claims 2, 3, 4, and 5, are deemed waived.

Turning to Turner's posttraumatic stress disorder, the ALJ noted that "[w]hile the claimant has reported paranoia and hypervigilance, and though these symptoms appear to be somewhat reasonable given his history, exams have not further shown any indications of significant distraction, nor hallucinations, delusions, or other psychotic symptoms." (Admin. R. 28). Further, the ALJ, pursuant to the two-part test required by 20 C.F.R. § 416.929 and SSR 16-3p, determined that "while the claimant may have posttraumatic stress disorder, . . . the medical evidence portrays less intensity and extent of limitation than Mr. Turner asserts. Despite these medically diagnosed impairments, he is still able to think clearly, communicate effectively, and act on his own

accord. . . . He can adapt to situational changes in the workplace and recognize hazards." (Admin. R. 28).

While Turner discusses his fears about retribution and attacks, he also worked several jobs with no mention of any issues of trusting coworkers or being paranoid around them. Further, Turner was repeatedly seen at the Emergency Room for medical attention related to his gout and visited Centerstone/Seven Counties for therapy, but no records indicate any conflicts or issues completing these visits due to the number of persons around Turner. Additionally, Turner conveyed his interests to Dr. Miller, which include playing basketball, taking his children to the park, playing flag football, going to the music store, playing paintball, and going to cookouts. (Admin. R. 436). Turner also conveyed that he occasionally takes public transportation. (Admin. R. 440). All of these activities, by their very nature, frequently involve contact with strangers. While he may have fears, paranoia, and anxiety regarding unknown people and the potential of retribution, Turner has continued these activities.

When reviewing these activities, as well as Turner's interactions with various members of the healthcare profession, the ALJ still considered Turner's paranoia, hypervigilance, and posttraumatic stress disorder when determining Turner's RFC. Specifically, as noted in the previous section, the ALJ determined Turner's RFC allowed "occasional[] interact[ion] with supervisors and coworkers, but never [] with the public." (Admin. R. 20).

The Magistrate Judge noted the ALJ's recounting of each of Turner's mental health visits, including dates, pertinent medical findings, and Turner's own description of his symptoms and mental status. (R&R 11 (citing Admin. R. 25-28)). The Magistrate Judge observed that the ALJ omitted "a September 13, 2017 visit, which did not contain any pertinent information that was different from that already discussed by the ALJ regarding the remaining records." (R&R 11

(citation omitted)).  The Magistrate Judge recounted each of the ALJ's summaries and emphases, which includes Turner's anxieties, denial of psychosis and self-harm, and absence of deficits in memory, attention, or concentration.  (R&R 11-13).  In reviewing the ALJ's determination of moderate limitation in interacting with others, the Magistrate Judge recounted the ALJ's notation that "Turner reported feeling paranoia and being hypervigilant; was moody and labile in his behavior; possessed a low frustration tolerance; and possessed a 'hair trigger' temper, [but] Turner's testimony regarding time spent with family members and daily activities were not consistent with those symptoms."  (R&R 13 (citing Admin. R. 19)).  Further, the ALJ noted that Turner was often described as "polite and cooperative"; "established a good rapport with medical providers"; "demonstrated good interactions with non-medical staff"; and "related well during the hearing, and was pleasant and respectful."  (R&R 13-14 (citing Admin. R. 19)).  As such, the Magistrate Judge found that the ALJ "cited to evidence in the record adequate to support her conclusion as to Turner's mental RFC."  (R&R 14).  Again, this determination is supported by substantial evidence in the record and must therefore be upheld.

Therefore, Turner's objection to the Magistrate Judge's findings, related to the ALJ's determination of Turner's mental RFC, is overruled.

## V.     CONCLUSION

While Turner's life so far has been trying, his previous work experience and medical history show that he is able to continue working consistent to his prior experience, with an RFC of medium work, especially if it is completed as the Dictionary of Occupational Titles describes.

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Objection (DN 21) is **OVERRULED**;

  2. Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 20) is **ADOPTED**;

  3. Plaintiff's Complaint (DN 1) is **DISMISSED**.

              Greg N. Stivers, Chief Judge
              United States District Court

              October 30, 2020

cc: counsel of record